JUDGE CROTTY

BROWN GAVALAS & FROMM LLP
Attorneys for Plaintiff
KAWASAKI KISEN KAISHA, LTD.
355 Lexington Avenue
New York, New York 10017
212-983-8500

08 CV 4860

RECEIVED MAY 23 2008 U.S.D.C. S.D.N.Y. CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
KAWASAKI KISEN KAISHA, LTD.,

             Plaintiff,

  -against-

CARGILL INTERNATIONAL, S.A.,

            Defendant.
------------------------------------------------------X

08 CV

**VERIFIED COMPLAINT**

     Plaintiff, KAWASAKI KISEN KAISHA, LTD. ("Plaintiff"), by its attorneys, Brown Gavalas & Fromm LLP, as and for its Verified Complaint against Defendant, CARGILL INTERNATIONAL, S.A. ("Defendant"), alleges upon information and belief as follows:

     1.  This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has jurisdiction under 28 U.S.C. § 1333.

     2.  At all material times, Plaintiff was and now is a foreign corporation with an office and place of business in Tokyo, Japan.

     3.  Upon information and belief, at all material times Defendant was and now is a foreign corporation with an office and place of business at 14 chemin de Normandie, Geneva, Switzerland.

     4.  At all material times, Plaintiff was the disponent owner of the motor vessel MISHIMA ("the Vessel").

     5.  On or about October 5, 2007, Plaintiff and Defendant entered into a charter party

agreement, whereby Plaintiff, as disponent owner, agreed to let, and Defendant, as charterer, agreed to hire the Vessel for a period of forty to sixty days for a voyage from Santos, Brazil to Amsterdam, Netherlands under certain terms and conditions more fully set out in the agreement ("the Charter Agreement").

6. Pursuant to the Charter Agreement, Defendant was required to pay daily hire to Plaintiff for the use of the Vessel, and other amounts specified in the Charter Agreement.

7. On or about October 23, 2007, the Vessel arrived at the port of Santos, Brazil in order to load Defendant's cargo for transport to the discharge port of Amsterdam.

8. Due to no fault or breach by Plaintiff, the Vessel remained in Santos for approximately twenty-seven (27) days, during which time the Vessel's bottom and hull accumulated substantial biological fouling.

9. The Vessel sailed from Santos for Amsterdam on or about November 19, 2007. Defendant failed to clean the Vessel's bottom and hull so as to remove the substantial biological fouling that had accumulated during the Vessel's extended stay in Santos. The increased fouling increased the Vessel's drag in the water, reducing its speed.

10. By correspondence dated December 20, 2007, Defendant wrongfully claimed underperformance of the Vessel and deducted the amount of $469,357.24 from hire due and owing to Plaintiff under the Charter Agreement, as per Plaintiff's invoice dated January 11, 2008.

11. As a result of Defendant's delay and failure to clean the biological fouling, Plaintiff incurred other costs as follows:

   a. In order to remove the accumulated biological fouling, Plaintiff performed an interim hull cleaning at a cost of $26,300.24 (€17,096.95 at the May 8, 2008, exchange rate of € 1 = USD 1.5383) when the Vessel berthed at Las Palmas,

2

Spain on December 6-7, 2007, and Plaintiff performed a second interim cleaning at a cost of $16,500.00 while the Vessel was taking on fuel in Panama on or about January 13, 2008.

b. Plaintiff performed an underwater inspection of the Vessel at the discharge port in Amsterdam on or about December 16, 2007, at a cost of $10,212.64 (€6,451.45).

c. In order to avoid regularly cleaning the Vessel until the Vessel's next scheduled dry-docking, Plaintiff arranged a special dry-docking and re-painting for the vessel at an out-of-pocket cost of $212,327.36. In order to perform this dry-docking, Plaintiff lost $649,040.00 in income as the ship was diverted from her course to and from the dry-dock, waiting time upon arrival for the dry-dock, and while the ship was in dry-dock for painting.

d. Because of the increased biological fouling, the Vessel underperformed in its transits until the special dry docking. Specifically, the Vessel lost 19 hours ($60,166.00) and over-consumed 20.68 MT IFO/1.5MT MDO ($7,444.80/$855.00) of bunkers between Amsterdam and Panama, for an additional cost of $68,465.80. The Vessel over-consumed 77.80 MT IFO/1.44 MT MDO ($28,008.00/$820.80) of bunkers between Panama and Japan, for an additional cost of $28,828.80.

12. These extended voyage and hull cleaning/repainting costs were caused solely by Defendant's failure to complete cargo loading operations within the time contemplated under the Charter Agreement, and due to other breaches of the Charter Agreement.

13. The Charter Agreement requires that all disputes between the parties be resolved by arbitration in London. This action is in aid of said arbitration proceedings in accordance with 9 U.S.C. § 8. Plaintiff seeks to obtain adequate security to satisfy a potential London arbitration

3

award in Plaintiff's favor.

15. In addition to recovering the principal amount due Plaintiff pursuant to the Charter Agreement, Plaintiff also fully anticipates recovering interest, costs and attorneys' fees, which are routinely awarded to the prevailing party in London arbitration proceedings. As best as can now be estimated, Plaintiff expects to recover the following amounts in the London arbitration:

| | | |
|---|---|---|
| a. | On the principal claim | $1,481,032.08. |
| b. | 3 years of interest at 6% per annum, compounded quarterly | $289,716.79 |
| c. | Costs (arbitrators' fees, attorneys' fees, etc.) | $300,000.00 |
| | TOTAL | $2,070,748.87 |

16. Upon information and belief, Defendant cannot be found within the District, within the meaning of Supplemental Rule B of the Federal Rules Civil Procedure, but is believed to have, or will have during the pendency of this action, assets within this District, specifically including cash, funds, freight, hire, accounts, and other property, in the hands of garnishees in the District including but not limited to American Express Bank, Ltd.; ABN-AMRO Bank; Bank of China; Bank of America; BNP New York; Bank of New York; J.P. Morgan Chase; Citibank; Deutsche Bank; Standard Chartered Bank; HSBC; Mashreq Bank; UBS AG; Calyon; Bank of Tokyo Mitsubishi Ltd.; Barclays Bank; and Wachovia Bank, which are believed to be due and owing to the Defendant.

WHEREFORE Plaintiff prays:

A. That process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against the Defendant, citing them to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B. That because the Defendant cannot be found within this District pursuant to Rule B of

the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of the Court to issue Process of Attachment and Garnishment, pursuant to Rule B of the Supplemental Admiralty Rules and the United States Arbitration Act, 9 U.S.C §§ 1 and 8, attaching all cash, goods, chattels, letters of credit, bills of lading, effects, debts, and monies, tangible or intangible, or any other funds held by any garnishee, including American Express Bank, Ltd.; ABN-AMRO Bank; Bank of China; Bank of America; BNP New York; Bank of New York; J.P. Morgan Chase; Citibank; Deutsche Bank; Standard Chartered Bank; HSBC; Mashreq Bank; UBS AG; Calyon; Bank of Tokyo Mitsubishi Ltd.; Barclays Bank; and Wachovia Bank, which are due and owing to the Defendant, in the amount of $2,070,748.87, to secure the Plaintiff's claim, and that all persons claiming any interest in the same be cited to appear and, pursuant to Supplemental Admiralty Rule B, answer the matters alleged;

C. That this action be stayed and this Court retain jurisdiction over this matter through the entry of any judgment or award, and any appeals thereof; and

D. That Plaintiff have such other, further and different relief as this Court may deem just and proper.

Dated: New York, New York
       May 23, 2008

                              BROWN GAVALAS & FROMM LLP
                              Attorneys for Plaintiff
                              KAWASAKI KISEN KAISHA, LTD

By: _____
                              Peter Skoufalos (PS-0105)
                              355 Lexington Avenue
                              New York, New York 10017
                              212-983-8500

# VERIFICATION

STATE OF NEW YORK    )
                     : ss.:
COUNTY OF NEW YORK   )

PETER SKOUFALOS, being duly sworn, deposes and says:

1. I am a member of the bar of this Honorable Court and of the firm of Brown Gavalas & Fromm LLP, attorneys for Plaintiff.

2. I have read the foregoing Verified Complaint and I believe the contents thereof are true.

3. The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff is a foreign corporation, no officer or director of which is within this jurisdiction.

4. The sources of my information and belief are documents provided to me and statements made to me by representatives of the Plaintiff.

_____
PETER SKOUFALOS

Sworn to before me this
23rd day of May, 2008

_____
Notary Public

EVAN B. RUDNICKI
Notary Public of the State of New York
No. 02RU6142314
Qualified in Rockland County
Term Expires March 13, 20[?]

6